Thomas C. Chimera, J.
Defendant tenant moves pursuant to rule 113 of the Rules of Civil Practice, for summary judgment and plaintiff makes a cross motion for the same relief. The action is one for a permanent injunction for damages and for attorneys’ fees. It appears to be a case of first impression.
We are asked to take a second look at the ancient feud between landlords and dogs and to say whether the drastic remedy of injunction is available against a recalcitrant tenant who, in two different paragraphs of a written lease, agreed that no dogs, cats or other animals shall be kept or harbored in the demised apartment unless expressly permitted by the landlord in writing. (Paragraph “Twenty-ninth” and rule ¡22 of the Rules and Regulations of the lease photostat attached to plaintiff’s moving papers.)
Defendant tenant was aware of the importance attached to this restriction by plaintiff landlord. This is clearly indicated in the fact that although the restriction in question was already part of the printed “ Rules and Regulations ” on the back of the lease, plaintiff landlord insisted on a typewritten paragraph in the ¡body of the lease itself, repeating the restriction substantially. Moreover, both parties initialed the typewritten insertion.
Courts should not countenance substantial breaches of agreements or give moral sanction to tenants who deceive their *434 landlords on the threshold of occupancy any more than they should clothe with sanctity the unnecessary and capricious restraints on tenants set up by some landlords, particularly when the housing market is “ tight ” and the compulsion of the times puts the tenant on an unequal and sometimes desperate footing.
This court has already decided in summary proceedings between these same parties, that the mere violation of these same restrictions was not a violation of a substantial obligation of the lease so as to warrant the drastic remedy of eviction. (L. & T. 5699-1961; final order revd. April 26,1962, App. Term, Supreme Ct., N. Y. L. J., April 27, 1962, p. 13, col. 2.) This conclusion was undoubtedly prompted by the compulsion of the times, by some evidence that defendant was then taking steps to get rid of the dog and that there were other dogs in the building; finally, because the record there was bare of any evidence of damage or destructiveness on the part of defendant and the members of his family or the dog.
Nor was this the first time that this court has ruled that “ The mere keeping of a dog in an apartment house in contravention of a lease is not a breach of a substantial obligation of tenancy. (B. G. Smith Real Estate v. Byrne, 3 Misc 2d 559; Parkside Development Co. v. McGee, 193 N. Y. S. 2d 910.)
On the foregoing facts, it was probably argued in the Municipal Court that the parties had in fact agreed that a breach of the provision in question should be deemed a substantial violation of the lease and that a court may not go behind that agreement and inquire whether it is or not. The Municipal Court apparently so ruled on the authority of L. H. Estates Co. v. Bartholomew (9 Misc 2d 116) but the reversal in the Appellate Term of this court is controlling and res judicata on this issue. It remains for the courts to say whether in the absence of special circumstances, the mere harboring of a dog in the face of a lease covenant against such practice, is sufficient to invoke the drastic remedy of injunction.
Nowhere in the complaint or in the papers presented by plaintiff does there appear any specification of irreparable damage as a result of defendant’s recalcitrance.
Plaintiff appears to be content to rest on the above state of facts and on the following bare assertions appearing in its complaint:
“ Sixteenth : That the harboring and maintaining of a dog by defendant in said premises, in violation of the terms of the written agreement... is detrimental to the best interests of the plaintiff herein.
*435 ‘ ‘ Seventeenth : That the plaintiff has no adequate remedy at law.”
Even were this court to consider plaintiff’s memoranda an amplification of its pleadings and its papers in support of its cross motion, I should look in vain for anything more than bare assertions and conclusions, in my opinion, too sweeping to warrant judicial notice of them in the classical sense. Consider the statement beginning at the foot of page 5 of plaintiff’s “Memorandum”: “It is important to note that the maintenance of a dog on the premises owned by the plaintiff herein will undoubtedly cause injury to the plaintiff that is impossible to measure in terms of pecuniary loss. Without going into the details, it is a well known fact that the necessary functions a dog must perform are extremely repugnant to some persons. The reason the plaintiff has initiated these proceedings to prohibit the maintenance of dogs in their building is due to their experience with the difficulties that dogs cause in an apartment house. The failure to obtain redress in the instant case will remove any barrier that may exist for any other tenants in the premises who may desire to maintain a dog in their respective apartments.”
We cannot assume that dogs by their nature are not capable of being 16 house-broken. ’ ’ In the light of the ‘ ‘ mine fields ’ ’ one is required precariously to sidestep on our city streets and even sidewalks (for shame!), and the thousands of “ curb your dog ” signs posted by the city fathers, one could conclude that many, if not most of our canine population, commit their nuisances outside private buildings. Nor may we assume that if respondent is allowed to keep his dog that this would inevitably increase the canine population in petitioner’s building. Tenants are people and, as such, partial or indifferent to dogs. Some are allergic to animal dander and not a few are incurable cynophobes. Dogs are of course like their masters — clean and unoffending for the most part and dirty and destructive in some few instances. There are adequate remedies at law for dirty and destructive tenants and for dirty and destructive dogs as well, even in the absence of an express covenant against dogs in a given lease.
It is a fundamental principle that equity interferes in the transactions of men by preventive measures, only when irreparable injury is threatened, and the law does not afford an adequate remedy for the contemplated wrong. (Thomas v. Musical Mut. Protective Union, 121 N. Y. 45, 52.) That is not the case here and the complaint must fall in the absence of any *436 claim or proof that the tenant committed or permitted a nuisance in the housing accommodations or that the tenant’s conduct was such as to interfere substantially with the comfort or safety of the landlord or of other tenants.
Accordingly, defendant’s motion for summary judgment is granted, plaintiff’s complaint is dismissed and its cross motion is denied as academic.